# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DIANA HANAN HANNA,**

      **Plaintiff,**

      v.                               Case No. 10-C-1032

**MATTHEW J. LACKIE,**

      **Defendant.**

## ORDER DENYING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

**I. PROCEDURAL HISTORY**

Diana Hanan Hanna ("Hanna"), an Illinois resident, was a passenger in a car driven by Matthew J. Lackie ("Lackie"), a Wisconsin resident, on September 3, 2007 when the vehicle was involved in a single car crash near LaPorte, Indiana. Two years later, on September 3, 2009, Hanna filed suit in the Northern District of Illinois against Lackie for damages allegedly sustained as a result of this accident. (Docket No. 1.) The case was dismissed for failure to prosecute on November 13, 2009. (Docket No. 6.) Nearly a year later, on October 21, 2010, Hanna filed a motion to reopen that case. (Docket No. 8.) The motion was granted on October 28, 2010, (Docket No. 12), and the following day, Hanna filed a motion to transfer this case to the Eastern District of Wisconsin, (Docket No. 15). The motion was granted and the case was transferred to this district on November 17, 2010, where it was randomly assigned to this court. (Docket Nos. 16, 17.)

The court sent two notices to the plaintiff requesting that proof of service upon the defendant be filed, the last of which stated that because it had been more than 120 days since the complaint

was filed, the matter would be dismissed if proof of service was not filed within 21 days. (Docket Nos. 18, 19.) On January 24, 2011, a summons was returned executed indicating that the defendant was served on January 20, 2011. (Docket No. 20.)

On February 1, 2011, the defendant answered the complaint and filed a motion to dismiss for insufficient service of process. (Docket Nos. 24, 25.) On February 22, 2011, the plaintiff responded to the defendant's motion to dismiss, (Docket No. 30), and also filed a motion to strike the defendant's affirmative defenses, (Docket No. 29). The plaintiff has replied to the defendant's response, (Docket No. 32), and responded to the defendant's motion to strike, (Docket No. 33). The plaintiff has also replied. (Docket No. 35.) The pleadings on the parties' motions are closed and the matters are ready for resolution. All parties have consented to the full jurisdiction of a magistrate judge. (Docket Nos. 22, 28.)

**II. MOTION TO DISMISS**

Federal Rule of Civil Procedure 4(m) requires that a plaintiff serve a defendant within 120 days after the complaint is filed. If service is not completed within a specified time, the court must dismiss the action without prejudice. Fed. R. Civ. P. 4(m). However, if a plaintiff demonstrates good cause for his failure to serve a defendant earlier, the court must extend the time for service. Id. "Good cause means a valid reason for delay, such as the defendant's evading service." Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir. 2002). Absent a showing of good cause, the district court must still consider whether a permissive extension is warranted before dismissing a case for failure to timely serve a defendant. Id.; Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996).

By focusing in her response exclusively upon the reasons for the delay, the plaintiff implicitly concedes that service upon the defendant was, in fact, untimely. This may be open for some debate. If the court were to look simply at the time between the filing of the complaint and the

date of service, clearly more than 120 days had elapsed; specifically, 504 days had run. But for nearly a year of this time, no case was pending because it had been dismissed by the court. Thus, it would be inappropriate to count the time during which no case was pending in the 120-day clock; because no case was pending, as a practical matter, there was no complaint to serve upon the defendant. See Geiger v. Allen, 850 F.2d 330, 333 (7th Cir. 1988) ("Of course, the 120-day period was tolled between the time that the action was dismissed and the date that the court reinstated the action, since no action was pending during that interval.").

However, even excluding the 349 days from the day the case was dismissed (November 13, 2009) to the date the case was reopened (October 28, 2010), the complaint was pending and un-served for a total of 155 days (71 days from the date the complaint was filed on September 3, 2009 to the date it was dismissed on November 13, 2009, plus 84 days from date case was reopened on October 28, 2010 to the date the defendant was served on January 20, 2011). But should the time prior to the complaint being dismissed be counted toward the 120 days?

Some authority suggests that it is not appropriate to count the time prior to the dismissal of the complaint, and therefore when a dismissed complaint is reinstated a plaintiff has a full 120 days from that date in which to complete service. See Chapman v. Widup, 584 F. Supp. 2d 1083, 1090 (N.D. Ill. 2008); Horton v. Marovich, 925 F. Supp. 532, 535 (N.D. Ill. 1996). If the court were to follow this approach, service upon the defendant was timely.

Other authority holds that dismissal merely tolls the 120-day period and should the case be reinstated, the plaintiff has whatever number of days to serve the defendant as remained at the time the case was dismissed. See Geiger, 850 F.2d at 333; Agostin v. Am. Airlines, Inc., 2003 U.S. Dist. LEXIS 10947 (N.D. Ill. Jan. 2, 2003); Porter v. Illinois Dep't of Children & Family Servs., 1997 U.S. Dist. LEXIS 12052 (N.D. Ill. Aug. 8, 1997); Kur v. Fox Valley Press, 1997 U.S. Dist. LEXIS

7098 (N.D. Ill. May 13, 1997). If the court were to follow this approach, service upon the defendant was untimely.

Hypothetically, if a case is initially dismissed on the 119th day of the 120-day clock, the plaintiff would be hard pressed to serve a defendant within 1 day when the case is reopened. But since reinstatement, instead of refiling the action, confers benefits upon the plaintiff (avoiding a statute of limitations bar and paying a new filing fee), should not the plaintiff also face the consequences of reopening, i.e. being limited to the remaining portion of the 120-day service period? However, even if a case was dismissed on the 119th day, a plaintiff would not necessarily be required to serve the complaint within 1 day. Concurrent with seeking reinstatement of his case, the plaintiff could seek an extension of time for service from the district court for good cause.

In the view of this court, when a dismissed case is reopened, including the time elapsed prior to dismissal in a single overall 120-day time period is most consistent with the purpose underlying Rule 4(m) of ensuring that defendants are promptly notified of pending actions and that cases proceed expeditiously. Therefore, it is the conclusion of this court that although the time during which no case was pending is excluded, the 71 days that elapsed from the date the complaint was filed until the complaint was dismissed and the 84 days from the date the case was reinstated until the defendant was eventually served are both counted for purposes of calculating the 120-day time period under Rule 4(m). Accordingly, the plaintiff had until December 16, 2010 (not un-coincidentally the date of the first letter from the Deputy Clerk, (Docket No. 18)) in which to serve the defendant or to file a waiver of service. Because a total of 155 days had elapsed from the date the complaint was filed until the defendant was eventually served on January 20, 2011, service occurred 35 days too late. Thus, this court must turn to the question of whether the plaintiff has demonstrated good cause for a 35-day extension of time.

**A. Good Cause**

This case relates to an accident that occurred in 2007. It was nearly three-and-a-half years later, and 16 months after the statute of limitations apparently expired, before the defendant was finally served with the complaint in this matter. Based solely upon these facts, a court might find it particularly difficult to find good cause for any additional time. However, as the plaintiff indicates in her response, this time was not spent entirely idly. Plaintiff's counsel was retained within a couple months after the accident and over the next two years a settlement offer and counteroffer were exchanged between plaintiff's counsel and the insurance company. (Docket No. 30 at 10.) Following the dismissal of the action, plaintiff's counsel continued to correspond with defense counsel and defense counsel indicated that the matter should proceed in Wisconsin or Indiana. (Docket No. 30 at 11-12.)

After the case was reopened and transferred to Wisconsin, plaintiff's counsel contacted one of the defendant's attorneys and subsequently received a message from another attorney referencing this matter. (Docket No. 30 at 13.) After a few rounds of unsuccessful phone tag over a span of weeks, plaintiff's counsel eventually made contact with defendant's current attorney of record in the first week of January. (Docket No. 30 at 13.) Defense counsel indicated she was not yet familiar with the case and they agreed to speak the following week. (Docket No. 30 at 14.) At about this same time, this court sent a second letter informing plaintiff's counsel that his proof of service was overdue and this time stated that the complaint would be dismissed if proof of service was not filed within 21 days. (Docket No. 19.)

Apparently believing that he still had 21 days in which to effect service, plaintiff's counsel contacted defense counsel on January 17, 2011 and inquired if she would accept service on the

defendant's behalf. (Docket No. 30 at 14.) Defense counsel indicated that she would not and therefore plaintiff's counsel proceeded to have the defendant served on January 20, 2011.

It is important to note that when the court sent the second notice to plaintiff's counsel on January 4, 2011, the plaintiff was already in violation of Rule 4(m). The court's letter was not a 21 day extension of time under Rule 4(m), but rather the notice required under Rule 4(m) before the court may dismiss an action for plaintiff's failure to timely execute service. Additionally, it seems that plaintiff's counsel is straining prior defense counsel's intended meaning of the term "safe harbor" when defense counsel stated in a December 8, 2009 letter that "[w]e are offering you safe harbor at this time to voluntarily dismiss this suit." (Docket No. 30 at 20.) In the court's view, based upon the context of the paragraph, defense counsel was likely, at the most, referring to foregoing potential sanctions that might otherwise be available for what defense counsel believed was an inappropriate decision to file this matter in Illinois. Counsel was not promising the defendant would look the other way on whatever other procedural defects might arise in the future.

Within this same letter, prior defense counsel stated: "We understand there is no service on Mr. Lackie and that you did not send a waiver of summons form, either. As his counsel, you can confer with us directly. We have no problem accepting service on his behalf so you do not have to serve him." (Docket No. 30 at 20.) Relying upon this statement it was entirely reasonable for plaintiff's counsel to forego serving the defendant.

If this was a case of the plaintiff serving defense counsel and the defendant now arguing that such service was insufficient, the court would have little problem finding good cause for a 35 day extension if such an extension was necessary at all. Except that is not what happened here. Not only did the plaintiff not serve the defendant, the plaintiff also failed to serve defense counsel or request waiver of service in accordance with Rule 4(d). Instead, plaintiff's counsel did nothing. Perhaps plaintiff's counsel regarded defense counsel's statement as a waiver of service under Rule 4(d). But

6

counsel's conduct belies this purported understanding; at no point did plaintiff file this or any other statement as a waiver of service under Rule 4(d)(4). It is the filing of the waiver that completes service under Rule 4(d). See Fed. R. Civ. P. 4(d)(4).

Even in light of the settlement discussions among the parties, defense counsel's offer to accept service, and the change in defense counsel when this matter was transferred, at a minimum, plaintiff's counsel should have mailed a waiver of service form to defense counsel promptly after this matter was transferred to this district. If the waiver of service was not timely returned, the plaintiff should have then proceeded to serve the defendant, requesting additional time, if necessary, based upon defense counsel's statement that he would accept service on behalf of the defendant as good cause for the extension. Saying, "We have no problem accepting service on his behalf," is not the same as actually waiving service. A plaintiff must still comply with the requirements of Rule 4(d) or (e). These provisions ensure not only that a defendant is informed of a case but also that the court is informed of the progress of the case. As this case demonstrates, when counsel fails to comply with these Rules, the court is required to send out notices to litigants that should be unnecessary.

In the court's view, the plaintiff has failed to offer any appropriate reason for the failure to timely serve the defendant. Having failed to offer a reasonable basis for his failure to timely serve the defendant, the court concludes that the plaintiff has failed to demonstrate good cause to warrant an extension of time. Therefore, the court must consider whether a permissive extension is warranted. Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996).

**B. Permissive Extension**

A permissive extension is granted at the discretion of the district court. Coleman, 290 F.3d at 934. Among the wide range of factors a court may consider in deciding how to exercise its discretion, the Seventh Circuit has identified the following specific factors: (1) whether the

7

defendant suffered any prejudice as a consequence of the delay; (2) whether and when the defendant received actual notice of the suit (even if not through formal service); and (3) the effect of dismissal upon the plaintiff including whether a dismissal without prejudice would be a de facto dismissal with prejudice because the statute of limitations has run. Id. But even if a balancing of all the hardships favors denying a defendant's motion to dismiss, the district court retains the discretion to dismiss the complaint. Id. A district court abuses its discretion only if the "district court was completely off base." Id.

In considering whether a permissive extension is appropriate the court finds it appropriate to consider the entire scope of plaintiff's counsel's conduct throughout this case. Quite frankly, plaintiff's counsel's prosecution of this case is troubling to the court. If liability is as clear-cut and damages as substantial as plaintiff's counsel represents, it is in explicable that any reasonable attorney would not act diligently to protect his client's rights. When the statute of limitations has run, as plaintiff's counsel acknowledges it has, (Docket No. 30 at 5), every step plaintiff takes in this case is along the edge of a steep cliff where an otherwise minor slip-up could prove fatal.

Plaintiff's counsel began this case by filing it in a forum he now seems to acknowledge was wholly inappropriate. Counsel then failed to appear at a status hearing, (Docket No. 6), leading to dismissal of the case and an entry of judgment, (Docket No. 7). Counsel failed to act for nearly a year, apparently unaware, according to his motion to reopen this case, that the case had been dismissed. (See Docket No. 8 at 1.) That an attorney would not only ignore a court order to appear at a hearing, and then miss the notice of dismissal he received, but also fail to do anything to inquire as to why a case he had filed was not otherwise progressing for nearly a year, is dumbfounding.

Fortunately for the plaintiff, the severe consequences for such inaction was avoided when the Northern District of Illinois granted the plaintiff's motions to reopen the case and to transfer it to

this district. But even after this case was given new life after a near-death experience, counsel still failed to proceed diligently.

Months passed with this case pending and counsel apparently doing nothing with respect to it other than an occasional voicemail message passing between attorneys or an insubstantial telephone conversation. (See Docket No. 30 at 13-14.) Execution of service was not pursued until the second letter from the clerk's office was sent. Only the sanction of dismissal seems to have sufficiently motivated action. Even so, plaintiff's counsel did not act immediately, but waited nearly another two weeks before contacting defense counsel. (Docket No. 30.) As a result of counsel's delays, proof of service was filed on January 24, 2011, only two days before the court would have dismissed the plaintiff's $1,500,000.00 claim, (see Docket No. 30 at 17), for a second time, effectively forever barring the plaintiff from ever pursuing relief from the defendant.

Based upon the overall lackadaisical handling of this case, and specifically with respect to the execution of service, it would be wholly appropriate to grant the defendant's motion to dismiss. However, two factors give the court pause. First, there are the consequences of dismissal. Dismissal at this point would likely forever bar the plaintiff from seeking relief from the defendant for her alleged injuries, which according to the complaint and other filings in this matter are significant and resulted in substantial damages.

Second, and most significantly, there is absolutely no indication that the defendant suffered any prejudice as a result of the 35 additional days it took for the plaintiff to finally serve the defendant. "When delay in service causes zero prejudice to the defendant or third parties (or the court itself), the granting of extensions of time for service, whether before or after the 120-day period has expired, cannot be an abuse of discretion." United States v. McLaughlin, 470 F.3d 698, 701 (7th Cir. 2006). In spite of the lack of service, the defendant was clearly well-aware of the facts

9

of the plaintiff's claim and had been for quite some time. The parties had engaged in some settlement discussions and some basic discussions about how the case should proceed.

Therefore, in light of the significant consequences of dismissal and because the defendant has failed to suggest any possibility of prejudice as a result of plaintiff's 35-day delay in service, the court shall grant the plaintiff the required additional time for service and thus deny the defendant's motion to dismiss.

### III. MOTION TO STRIKE

Plaintiff seeks to strike with prejudice all of the affirmative defenses contained in the defendant's answer. (Docket No. 29.) Federal Rule of Civil Procedure 12(f) states: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

> Affirmative defenses will be stricken "only when they are insufficient on the face of the pleadings." Heller Financial v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike "are 'not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense,'" Glenside West Corp. v. Exxon Co., 761 F. Supp. 1100, 1115 (D.N.J. 1991) (quoting Durham Indus. v. North River Ins. Co., 482 F. Supp. 910, 913 (S.D.N.Y. 1979)), and are inferable from the pleadings, see United States v. 416.81 Acres of Land, 514 F.2d 627, 631 (7th Cir. 1975).

Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991).

> It is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case. See Household Fin. Servs., Inc. v. Northeastern Mortgage Inv. Corp., 2000 U.S. Dist. LEXIS 8975, 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295). It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a "short and plain statement" of all the material elements of the defense asserted; bare legal conclusions are not sufficient. See Heller, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); Renalds v. S.R.G. Restaurant Group, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000).

Davis v. Elite Mortg. Servs., 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009).

Having reviewed the defendant's affirmative defenses, (Docket No. 24 at 2-3), the court concludes that each sufficiently sets forth in short plain terms the basis for each affirmative defense. Therefore, the court declines to exercise its discretion to strike any of the defendant's affirmative defenses. Accordingly, the plaintiff's motion to strike shall be denied.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss, (Docket No. 25), is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike, (Docket No. 29), is **denied**.

The court will discuss pretrial scheduling with the parties at the Rule 16 conference on April 12, 2011.

Dated at Milwaukee, Wisconsin this 7th day of April, 2011.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge